# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-KA-01215-SCT

*ALVIN WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/01/94 |
| TRIAL JUDGE: | HON. JAMES E. THOMAS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CECIL GERALD WOODS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: WAYNE SNUGGS |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 9/4/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/25/97 |

**BEFORE SULLIVAN, P.J., PITTMAN AND BANKS, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

Alvin Williams was convicted for the rape and sexual battery of an eight-year-old female child. We affirm his conviction after examining the basis of this appeal and finding no reason to reverse the trial court.

**I.**

Alvin Williams was charged with one count of capital rape and one count of sexual battery of his then eight-year-old step-granddaughter Jessica Washington. The alleged rape and battery occurred on February 27, 1992, while Jessica's grandmother left the child with the appellant to attend a church activity. The next day at school Jessica participated in a program called "Good Touch, Bad Touch," where she reported the alleged incident of sexual wrongdoing to authorities with the Department of

Human Services.

The child was examined at the Memorial Hospital in Gulfport on or about February 29, 1992. No tears or lacerations were found to the child's private parts. On March 2 and 3, 1992, Jessica was again examined by Dr. J. Donald Matherne who conducted an evaluation which showed that the child suffered from mild retardation. Dr. Matherne determined that Jessica had knowledge of sexual activity inconsistent with a child her age and recommended counseling.

On August 27, 1993, a multi-count indictment was filed in the Circuit Court of Harrison County by a grand jury charging Williams with the alleged crimes. At trial, Jessica testified that the appellant touched her vagina and made her perform fellatio. A jury trial was held and Williams was convicted of capital rape and sexual battery and sentenced to life imprisonment in count I and thirty years in count II to be served consecutively in the custody of the Mississippi Department of Corrections. Appellant filed a motion for JNOV, and, in the alternative, a motion for a new trial;, however, both were overruled on November 18, 1994. The appellant now appeals to this Court.

## II.

Williams contends that he should not have been convicted because the victim's testimony should have received strong scrutiny, and the testimony offered by the victim lacked the corroboration required by statutory law.

According to Miss. Code Ann. § 97-3-65 (Rev. 1994), "[i]n all cases where the child is under the age of fourteen (14) years it will not be necessary to prove penetration of the child's private parts where it is shown the private parts of the child have been lacerated or torn in the attempt to have carnal knowledge of the child." Williams argues that this section suggests that where no evidence of lacerations or tears are present penetration must be proven. Williams further argues the record shows that Dr. Ward, an emergency physician at Gulfport Memorial Hospital, found no lacerations or tears to the private parts of the victim.

The State suggests that Williams' reading of the record is incomplete. Dr. Hershline, a Board certified pediatrician, and Dr. Ward both testified as to evidence which showed attempts to have carnal knowledge of the child. While both doctors testified that no tears or lacerations were present near the victim's private part, each indicated that the area was very red. Also, Dr. Hershline offered an explanation for the absence of tears or lacerations to the victim's vaginal area." After repeated penetration, there is some scarring that has probably occurred and the actual opening of the vagina starts to allow the penetration without significant tears and/or damage. . . ."

The State argues that there is evidence to support the assertion that the victim was penetrated. First, the victim's vaginal opening was found to be ten millimeters which the evidence suggests is abnormal. Also, doctors examining the victim found that the hymen was thinned or attenuated which was not normal for a child the victim's age. Couple this evidence with the victim's testimony and the evidence of penetration is sufficient. The child told the treating physician that Williams put his penis in her mouth, anus and vagina. In sum, this evidence supports a finding that the victim was indeed penetrated.

## III.

The appellant disputes whether fellatio is sexual penetration sufficient to comply with the meaning of sexual penetration as defined by Miss. Code Ann. § 97-3-97 (1994). *Miller v. State*, 636 So. 2d 391 (Miss. 1994), clearly holds that fellatio is an act sufficient to constitute sexual battery. Williams claims that the legislature has not defined fellatio. Therefore, the trial court erred in finding Jessica's testimony that the appellant made her "suck his dick" was legally sufficient to support the conviction of sexual battery.

In pertinent part, Miss. Code Ann. § 97-3-95 (1994) states that sexual battery is committed when one engages in sexual penetration with a child under age fourteen (14). Subsection (a) of Miss. Code Ann. § 97-3-97 includes fellatio as a form of sexual penetration. *Id.* at 396.[1] Williams' argument is without merit.

## IV.

Williams asserts that Dr. Matherne's testimony was inadmissible hearsay. Dr. Matherne's testimony focused on his two evaluations of Jessica. During these evaluations Dr. Matherne obtained a history from Jessica, and conducted several educational and I.Q. tests. Related information as to Jessica's demeanor was also recorded during the evaluations. Prior to his testimony in open court, Dr. Matherne was admonished by the Court to confine his testimony to matters as to Jessica's educational level, I.Q. and demeanor as not to violate the rules of evidence.

In describing the testing done in conjunction with the evaluation of Jessica, Dr. Matherne explained that his evaluation focused on finding consistency in the information provided by the child. The results of the evaluations showed that Jessica was consistent in general conversation, behavior, but not as to her knowledge of sexual activity. Over Williams' objection which was overruled, Dr. Matherne explained that:

> Her knowledge of sexuality was not consistent with that of an eight-year-old child. That is one of the factors that I look for in terms of what is said, the knowledge of the individual and the chronological age of the child. And based upon that questioning and the knowledge of her age, it was very apparent to me that her knowledge was inappropriate in terms of her chronological age.

Williams argues that the Miss. R.Evid. 801(d)(1)(B) bars the admission of Dr. Matherne's testimony. Also, Williams cites *Tome v. United States*, 513 U.S. 150 (1995) where the U.S. Supreme Court found that it was error to admit evidence under Fed. R. Evid. 801(d)(1)(B) because the prior consistent statements were made after the alleged motive to fabricate arose. While the holding in *Tome* provides an intriguing analysis of 801(d)(1)(B), Williams' reliance on this rule and this Supreme Court case is misplaced. The State made it clear during the pretrial motions that it relied upon Miss. R. Evid. 803(4) to admit any testimony of Dr. Matherne if necessary.

Under Miss. R. Evid. 803(4), out-of-court statements that are made for the purpose of medical diagnosis or treatment are not hearsay.[2] Dr. Matherne testified that the evaluations were done for diagnosis and treatment purposes. After considering the testimony, Dr. Matherne, diagnosed Jessica as having adjustment disorder with anxious mood. Based upon the interviews with the child, outpatient counseling treatment was recommended.

In ***Johnson v. State***, 666 So. 2d 784 (Miss. 1995), Rule 803(4) was used to admit statements uttered by a child that was subjected to capital rape where the examining doctor relied on the child's statements during a medical examination for diagnosis purposes to identify the perpetrator. "Where the child is sexually assaulted by a member of the child's immediate household, an important part of treatment is the prevention of further sexual abuse as well as ***the treatment of emotional and psychological injuries***." ***Id.*** at 795. (Emphasis Added). While Dr. Matherne did not use any of the statements made by Jessica during the evaluation to identify Williams as the perpetrator, Dr. Matherne appears to have relied upon the statements given by the child to conclude that she needed counseling treatment to deal with the emotional and psychological injuries she possibly had due to her inappropriate knowledge of sexual activity.[(3)] Miss. R.Evid. 803(4) would admit statements Dr. Matherne would have learned from Jessica in the evaluation, however, nothing more than Dr. Matherne's diagnosis and treatment were stated at the trial. Those statements revealing the child's knowledge concerning sex were important for the fact that they were made rather than for the truth of any assertion contained in them. These statements therefore did not fit within the definition of hearsay.

Also, Williams argues that his Sixth Amendment right under the constitution to confront witnesses was violated. The record reflects no violation of Williams' right to confront any witness at trial. The appellant's brief lacks any information substantiating the contention of a Sixth Amendment violation. Thus, the appellant's claim is without merit.

<h1 style="text-align:center">V.</h1>

Williams contends that the indictment charging capital rape and sexual assault did not comply with the constitutional requirement set out in Article 6, § 169 of the Mississippi Constitution.[(4)] In particular, Williams argues that because the indictment in which he was charged did not conclude with the words "against the peace and dignity of the state", the indictment was defective and the lower court lacked the authority to sentence him as a habitual offender. In ***McNeal v. State***, 658 So. 2d 1345 (Miss. 1995) this Court held that where an indictment does not conform to Section 169 of Article Six of the Mississippi Constitution it shall be fatally defective. ***Id.*** at 1350.

The State argues that the indictment in the instant case is not defective because Williams failed to raise his objection at trial. The State relies on the holding in ***Brandau v. State***, 662 So. 2d 1051 (Miss. 1995) which was issued subsequent to ***McNeal***. ***Brandau*** stands for the proposition that an indictment that fails to comply with Article Six of Section 169 of the Mississippi Constitution is defective, however, any right that surfaces because of this defect is waived if there is a failure to demur to the indictment in accordance with Miss. Code Ann. § 99-7-21 (1994 Rev.). Williams argued at trial that the scheme of the indictment offered against him at trial was unconstitutional. Williams' contention was not based on a failure of the indictment to meeting the requirements of Section 169 of the Mississippi Constitution. Moreover, the record does not indicate that Section 169 of the Mississippi Constitution was raised as a basis for objection prior to this appeal. Therefore, ***Brandau v. State***, 662 So. 2d 1051 (Miss. 1995), controls and the appellant's assignment of error is baseless.

<h1 style="text-align:center">VI.</h1>

The appellant relies on the U.S. Supreme Court holding in *Strickland v. Washington*, 466 U.S. 668 (1984) to support his final argument that his conviction should be overturned. In *Strickland*, the Court defined the standard that must be met in order to reverse a conviction because of ineffective assistance of counsel.

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. at 687.

Williams' only point of contention regarding his legal representation is based on defense counsel's failure to raise the argument that the indictment was defective because it did not comply with Article Six of Section 169 of the Mississippi Constitution. The record shows that the appellant's trial was held almost a full year prior to the *McNeal* decision which held that an indictment was fatally defective where that portion of the indictment that charged the defendant as a habitual offender was on a separate page and followed the words "against the peace and dignity of the state." Here, unlike *McNeal*, the fact that Williams was charged as an habitual offender was clearly stated on the face of the indictment. More compelling, however, is the fact that we have held in *Brandau* that the defect in question is curable by amendment. It is doubtful therefore, that raising the issue would have been of great benefit to Williams.

The decision of the Harrison County Circuit Court is therefore affirmed consistent with this opinion.

**COUNT I: CONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IMPRISONMENT AFFIRMED. COUNT II: CONVICTION OF SEXUAL BATTERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY WITHOUT HOPE OF PAROLE OR PROBATION.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY.**

1. Fellatio is a common enough term that it needs no legislative definition. The act of fellatio is defined by Webster's New Collegiate Dictionary, Edition Nine (1984) as "to suck: oral stimulation of the penis." To fellate is to "perform fellatio on."

2. Miss. R. Evid. 803(4) states that

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court,

in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. For purposes of this rule, the term "medical" refers to emotional and mental health as well as physical health.

3. The record indicates that Jessica was nervous, anxious and disgusted when questioned about the information of the sexual subject matter.

4. The section reads as follows:

The style of all process shall be "The State of Mississippi," and all prosecutions shall be carried on in the name and by authority of the "State of Mississippi," and all indictments shall conclude "against the peace and dignity of the state."